Case 7:15-cv-00084   Document 67   Filed in TXSD on 10/07/16   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
October 07, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ERNESTO GONZALEZ-SEGURA, § | | |
| § | | |
| Petitioner, § | | |
| VS. § | CIVIL ACTION NO. 7:15-CV-84 | |
| § | | |
| Loretta E. Lynch, § | | |
| § | | |
| Respondent. § | | |

## OPINION & ORDER

The Court now considers the motion for summary judgment,[1] filed by Loretta E. Lynch ("Respondent"), and the motion for leave to redesignate expert witness,[2] filed by Ernesto Gonzalez-Segura ("Petitioner"). After considering the motions, responsive filings, record, and relevant authorities, the Court **GRANTS** the motion for summary judgment and **DENIES** the motion for leave to redesignate expert witness as moot.

### I. Background

This is a citizenship case involving a dispute under the Immigration and Nationality Act ("INA") § 309(a). In 1990, Petitioner obtained legal permanent residency in the United States pursuant to INA § 245(a).[3] In 1995, Petitioner was excluded and deported from the United States pursuant to INA §§ 212(a)(2)(C), 212(a)(6)(B)(i), and 212(a)(7)(A)(i)(I).[4] On September 27, 2004, Petitioner was again removed from the United States following a conviction for the Manufacture/Delivery of Controlled Substances.[5] On October 17, 2013, Petitioner filed an N-600, Application for Certificate of Citizenship with the Department of Homeland Security and

---

[1] Dkt. No. 60.
[2] Dkt. No. 63.
[3] Dkt. No. 19, at p. 3.
[4] *Id.* at Ex. 4, pp. 14–15.
[5] *Id.* at Ex. 1.

U.S. Citizenship and Immigration Services ("USCIS") in Harlingen, Texas, claiming U.S. Citizenship based on his alleged father's birth in Mercedes, Texas.[6]

On October 20, 2014, Petitioner was in the custody of the Cameron County Sheriff's Office in Texas when he was picked up and detained by Immigration and Customs Enforcement ("ICE").[7] Petitioner told ICE that he was a U.S. citizen because his alleged father was a natural-born-citizen.[8] That day, Petitioner was charged in U.S. District Court with criminal reentry in violation of 8 U.S.C. § 1326.[9] On October 21, 2014, Petitioner was indicted on this charge,[10] and soon thereafter USCIS denied Petitioner's N-600 application.[11] On December 16, 2014, the indictment was dismissed without prejudice upon a motion by the federal government.[12]

On November 17, 2014, Petitioner filed a petition for review of his citizenship claim in the United States Court of Appeals for the Fifth Circuit.[13] On December 15, 2014, Petitioner filed a motion to transfer the petition for review to the United States District Court for the Southern District of Texas, McAllen Division, pursuant to 8 U.S.C. § 1252(b)(5), and filed a motion for stay of removal.[14] On January 26, 2015, the Fifth Circuit transferred Petitioner's claim to this Court pursuant to 8 U.S.C. § 1252(b)(5)(B) and granted Petitioner's motion for stay of removal.[15] This case was filed with this Court on February 19, 2015.[16]

---

[6] *Id.* at p. 3, citing Ex. 5–6.
[7] *Id.* at 2.
[8] *Id.*
[9] *Id.* at 2–3, citing Ex. 1–2.
[10] *Id.* at 3.
[11] *Id.* at Ex. 6.
[12] *Id.* at Ex. 3.
[13] *Ernesto Sandoval-Segura v. Jeh Johnson, Secretary, DHS*, Case No. 14-60817, Dkt. No. 1.
[14] *Id.* at Dkt. No. 6.
[15] *Id.* at Dkt. No. 11.
[16] Dkt. No. 1.

Petitioner was born on June 13, 1969 in Rancho Vera Cruz, Rio Bravo, Tamaulipas, Mexico.[17] Petitioner alleges that his biological father was Nicolas Gonzalez, a U.S. citizen. Petitioner's mother, Natalia Segura, never married Gonzalez.[18] Nevertheless, Petitioner alleges that Segura and Gonzalez had three children together, including Petitioner.[19] Petitioner contends that on August 8, 1970, Gonzalez handwrote a paragraph on the backside of a document from 1963 that the parties refer to as the "land conveyance document" ("1963 document"), which states, "yo Nicolas Gonzalez *dejo/deje* esta propiedad para la señora Natalia Segura y mis hijos Ernesto, Ruben, Ernesto Gonzalez pagada en su totalidad el mes de Agosto 8 de 1970," signed by Nicolas Gonzalez.[20] As more fully discussed below, the 1963 document clearly transferred property to Segura, but it is uncertain whether the property was also transferred to Gonzalez. In 1972, Segura married Lorenzo Sandoval, and they registered Petitioner as Sandoval's son with the Civil Registry of Rio Bravo, in Mexico.[21] In 1975, Gonzalez died.[22] In 1984, Lic. Francisco Barrera Garza notarized the 1963 document.[23]

In 2007, at age thirty-eight, Petitioner brought a lawsuit against the Civil Registry of Rio Bravo, Segura, and Sandoval to amend his birth certificate to reflect that Gonzalez was his biological father.[24] That year, a Tamaulipas court amended the birth certificate and listed Gonzalez as Petitioner's biological father.[25] Ultimately, Petitioner argues he was legitimated (1) by this amended birth certificate, and (2) pursuant to the handwritten paragraph on the backside of the 1963 document.

---

[17] Dkt. No. 19, at p. 1.
[18] *Id.* at 1–2.
[19] *Id.*
[20] Dkt No. 60-1, at p. 2 (emphasis added).
[21] Dkt. No. 19, at p. 2.
[22] *Id.*
[23] Dkt. No. 60-1, at p. 3.
[24] Dkt. No. 19, at p. 2.
[25] Dkt. No. 19, at p. 25.

There have been multiple court appearances, briefs submitted, and motions filed in this case. At the May 12, 2015 initial pretrial conference, the Court ordered the parties to file briefs on the issue of the amended birth certificate. Petitioner and Respondent filed briefs on July 16, 2015[26] and August 10, 2015,[27] respectively. At the August 18, 2015 status conference, the Court noted its inclination to agree with Respondent on the legitimation briefing, but abstained from ruling on the matter. The Court additionally ordered the parties to file briefs on the issue of acknowledgement under Tamaulipas law and all dispositive issues that warranted attention before discovery. Petitioner and Respondent filed briefs on September 17, 2015[28] and October 15, 2015,[29] respectively. At the October 29, 2015 status conference, the Court ordered the parties to submit copies of the Mexican laws cited in their briefs, along with translations.

Petitioner and Respondent filed motions for leave to designate experts on November 5, 2015[30] and November 12, 2015,[31] respectively. On November 24, 2015, Respondent submitted copies of the translated Mexican laws. On December 18, 2015, Respondent filed a motion for leave to file a motion for summary judgment, accompanied by a proposed motion for summary judgment.[32] In that motion, Respondent included a declaration by expert witness David Lopez explaining that the 1963 document was not a public document.[33] Additionally, on December 18, 2015, Respondent filed a motion to postpone the trial so the Court could rule on the motion for leave to file summary judgment.[34] On January 15, 2016, the Court granted the parties' motions for leave to designate experts, granted Respondent's motion for leave to file a motion for

---

[26] Dkt. No. 11.
[27] Dkt. No. 16.
[28] Dkt. No. 19.
[29] Dkt. No. 22.
[30] Dkt. No. 29.
[31] Dkt. No. 31.
[32] Dkt. No. 32.
[33] Dkt. No. 35.
[34] Dkt. No. 38.

summary judgment, and granted Respondent's motion to postpone the trial.[35] On February 2, 2016, Petitioner filed a motion for leave to amend the pleadings,[36] and then on February 3, 2016, filed a response to Respondent's motion for leave to file summary judgment.[37] On February 22, 2016, Respondent filed a response to Petitioner's motion to amend its pleadings.[38]

On April 1, 2016, the Court issued an order denying Petitioner's motion to amend as unnecessary, and ordered the parties to file briefs on the issue of whether the 1963 document is a holographic will under Tamaulipas law and all dispositive issues that warranted attention.[39] Petitioner filed a brief and amended brief on May 2, 2016,[40] and Respondent filed a brief on May 20, 2016.[41]

On June 24, 2016, Respondent filed a motion for leave to file a second motion for summary judgment,[42] which the Court granted on June 28, 2016.[43] Thereafter, Respondent filed the instant motion for summary judgment on June 28, 2016.[44] Petitioner filed a response on July 17, 2016,[45] and Respondent filed a reply on July 26, 2016.[46] Petitioner filed a motion for leave to redesignate expert witness on July 28, 2016,[47] to which Respondent responded on August 5, 2016.[48] The Court now considers the instant motions.

---

[35] Dkt. No. 48.
[36] Dkt. No. 49.
[37] Dkt. No. 50.
[38] Dkt. No. 51.
[39] Dkt. No. 54.
[40] Dkt. No. 55, 56.
[41] Dkt. No. 57.
[42] Dkt. No. 58.
[43] Dkt. No. 59.
[44] Dkt. No. 60.
[45] Dkt. No. 61.
[46] Dkt. No. 62.
[47] Dkt. No. 63.
[48] Dkt. No. 64.

## II.     Summary Judgment Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] A fact is "material" if its resolution could affect the outcome of the action,[50] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[51] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[52]

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[53] In this showing, "bald assertions of ultimate fact" are insufficient.[54] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[55] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[56] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[57] This demonstration must specifically indicate facts and their significance,[58] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[59]

---

[49] FED. R. CIV. P. 56(a).
[50] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[51] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[52] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[53] See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[54] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).
[55] See *Celotex Corp.*, 477 U.S. at 323.
[56] See *id.* at 323-25; see also *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[57] See *id.*
[58] See *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[59] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[60] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[61] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[62] Parties may cite to any part of the record, or bring evidence in the motion and response.[63] By either method, parties need not proffer evidence in a form admissible at trial,[64] but must proffer evidence substantively admissible at trial.[65]

### III. Discussion

Petitioner, although born in Mexico, claims that he is a U.S. citizen because his alleged father was a natural-born-citizen. "The applicable law for transmitting citizenship to a child born abroad when one parent is a citizen is the statue in effect at the time of the child's birth."[66] Thus, to acquire U.S. citizenship, Petitioner must satisfy the applicable INA statutes from 1969, by showing: (1) he was legitimated before the age of twenty-one under the laws of the Mexican state where he resided or was domiciled as a child,[67] and (2) before his birth, his father had ten years of physical presence in the United States, at least five of which were after the age of

---

[60] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[61] *See id.*
[62] *See* FED. R. CIV. P. 56(e). The Court ordered the parties to file briefs, and the Court considers the briefs to fully analyze each of the arguments presented in the context of this motion for summary judgment.
[63] *See* FED. R. CIV. P. 56(c).
[64] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[65] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[66] *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013).
[67] 8 U.S.C § 1409(a) (1964).

fourteen.[68] Petitioner was born and resided in the Mexican state of Tamaulipas, and thus its laws govern this claim of legitimation.[69]

From October 24, 1961 until January 31, 1987, legitimation laws in Tamaulipas were governed by the 1961 Civil Code of Tamaulipas ("CCT").[70] The parties agree that the CCT is the applicable law for this case. The parties also agree that under Article 370 of the CCT, a child born out of wedlock is legitimated either by the father's voluntary acknowledgment or a judgment declaring paternity.[71]

The dispute in this case centers around Article 379. Each of the parties has provided their translated version of that article. The Court, however, begins with the Spanish version. Article 379 provides that the recognition of a child born out of wedlock can be accomplished in the following ways:

> I. En la partida de nacimiento ante el oficial del Registro Civil;
>
> II. Por acta especial ante el mismo oficial;
>
> III. Por escritura pública;
>
> IV. Por testamento;
>
> V. Por confesión judicial directa y expresa.[72]

The parties offer very similar translations for sections I, II, IV, and V, but dispute the interpretation of "escritura pública." Petitioner's expert translates "escritura pública" to mean *public document*.[73] Respondent's expert translates "escritura pública" to mean *notarial*

---

[68] 8 U.S.C. § 1401(a)(7) (1964).
[69] Although the Court uses the term "legitimation," the Tamaulipas Code uses the term "acknowledgement." However, the Fifth Circuit has held that "there is no legal or logical basis for holding that a mere textual distinction between acknowledgment and legitimation in the foreign law should be controlling." *Iracheta*, 730 F.3d, at 426.
[70] Dkt. No. 16-1, at p. 2.
[71] Dkt. No. 60, at ¶ 39; Dkt. No. 61, at ¶ 11.
[72] Dkt. No. 55-1, at p. 8.
[73] *Id.* at p. 15 (emphasis added).

*instrument*.[74] Respondent also provides the Law Library of Congress' translation of "*public instrument (notarized document)*."[75]

While the parties dispute the translation of "escritura pública," Fifth Circuit law is clear that "differences of opinion on the content, applicability, or interpretation of the foreign provision may not be characterized as a 'genuine issue as to any material fact.'"[76] Thus, the issues in this case are purely legal ones for the Court's determination. That determination is made in accordance with Rule 44.1 of the Federal Rules of Civil Procedure which provides in pertinent part, that "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a *question of law*."[77]

The Court, here, disagrees with Respondent's assertion that "escritura pública" translates to a notarial instrument. After analyzing the original, the translations, the parties' briefs, and their motions, the Court finds that "escritura pública" translates to a public instrument, specifically one that is executed before a Mexican Notary Public.

Ultimately, the Court finds that a child born out of wedlock can be recognized in the following ways under Article 379:

I. In a birth certificate before the Civil Registry Official;

II. In a special document before the Civil Registry Official;

III. Via a public instrument, specifically one that is executed before a Mexican Notary Public;

IV. Via a will;

V. Via a direct and express judicial confession.

---

[74] Dkt. No. 60-1, at p. 36 (emphasis added).
[75] Dkt. No. 16-1, at p. 6 (emphasis added).
[76] *Banco de Credito Indus., S.A. v. Tesoreria General*, 990 F.2d 827, 838 (5th Cir. 1993).
[77] FED. R. CIV. P. 44.1 (emphasis added).

Petitioner argues that he satisfies the legitimation requirement of INA § 309(a) because he was legitimated under Article 379 (1) by his amended birth certificate, and (2) pursuant to a public instrument or will - the handwritten paragraph on the backside of the 1963 document.[78]

### a. Amended Birth Certificate

Petitioner's first argument is that he was legitimated by his amended birth certificate because it is (1) registered before the Civil Registry Official and (2) a public instrument.[79]

### i. Birth Certificate Before the Civil Registry Official

Petitioner's amended birth certificate was registered before the Rio Bravo Civil Registry in 2007.[80] Since the birth certificate was registered before the Civil Registry Official, there is no dispute that Petitioner now satisfies the legitimation requirement under section I of Article 379. Nevertheless, the issue is whether the change in the birth certificate may be given retroactive effect here because former INA § 309(a) requires legitimation before the age of twenty-one.[81] The Court finds that retroactive effect is incompatible with former INA § 309(a). The statute is clear in requiring Petitioner to show that he was legitimated before age twenty-one.[82] There is no contemplation of retroactivity in the statute, and the Court agrees with Respondent that the congressional intent behind the twenty-one years of age requirement was to allow a U.S. citizen father and his non-citizen child to establish strong connections during the age of minority.[83] Moreover, the Fifth Circuit, in considering the effect of a state's nunc pro tunc order to a similar claim has twice rejected the argument that such order should be given retroactive effect to

---

[78] Dkt. No. 61, at pp. 5-14.
[79] Dkt. No. 61, at pp. 5–7.
[80] Dkt. No. 61-2.
[81] 8 U.S.C. § 1409(a) (1964).
[82] *See Id*.
[83] Dkt. No. 60, at ¶ 15.

establish citizenship.[84] In both of these cases, the Fifth Circuit cited to *Fierro v. Reno*, a First Circuit case in which that court found that "recognizing the nunc pro tunc order [] would in substance allow the state court to create loopholes in the immigration laws . . . ."[85] So too here. As a result, even though registration of the amended birth certificate before the Rio Bravo Civil Registry may satisfy Article 379, such registration does not satisfy INA § 309(a) because it occurred after Petitioner turned twenty-one.

### ii. Public Instrument

Petitioner additionally argues that the amended birth certificate satisfies Article 379 because it is a public instrument.[86] Petitioner provides the Tamaulipas Court order labeling the birth certificate as a "documentation publica," which translates to "public document."[87] Even if the birth certificate qualifies as a public instrument sufficient to satisfy Article 379, the non-applicability of retroactive effect prevents the birth certificate from satisfying INA § 309(a) because it was not amended until after Petitioner turned twenty-one.

### b. 1963 Document

Petitioner's second argument is that the handwritten paragraph on the backside of the 1963 document ("1970 handwritten paragraph") is a form of legitimation because it is a (1) public document and (2) holographic will.

### i. Public Instrument

Petitioner contends that the 1970 handwritten paragraph is a public document, thus legitimating him under Article 379. The Court finds for the purpose of analyzing this claim under Article 379, that a public document is a public instrument. In earlier briefing, Petitioner argues

---

[84] *United States v. Esparza*, 678 F.3d 389 (5th Cir. 2012); *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006).
[85] 217 F.3d 1, 7 (1st Cir. 2000).
[86] Dkt. No. 61, at ¶ 17.
[87] Dkt. No. 61-1, at p. 2.

that the 1970 handwritten paragraph is a deed, and under Article 325, a deed is a public document.[88] Article 325 in its original form, provides in relevant part:

> Entre otros, tienen categoría de documentos públicos:
>
> > I. Los testimonies de las escrituras públicas otorgadas con arreglo a derecho y las escrituras originales mismas[.][89]

The parties provide nearly identical translations of this Article, except for their translations of "esritura públicas." The Court considers first Petitioner's interpretation of Article 325:

> Among others, the following are categorized as public documents:
>
> > I. The statement in property *deed* granted by agreement in accordance with a right in the same original writings. (Public *deeds* granted in accordance with the law and the original deed that was notarized.)[.][90]

As previously discussed, the Court finds that "escritura pública" translates to a public instrument, specifically one that is executed before a Mexican Notary Public. Thus, the Court does not agree with Petitioner's translation here. Nevertheless, even if the Court found that a deed would come within the definition of a public document under Article 325, Petitioner has not presented sufficient evidence to raise a fact issue that the 1970 handwritten paragraph is a deed. Absent such evidence, Petitioner has not demonstrated that the 1970 handwritten paragraph would qualify as a public document that would satisfy Article 379's requirement of establishing paternity through a public instrument.

### ii. Holographic Will

Petitioner's final argument is that the 1970 handwritten paragraph satisfies Article 379 because it is a holographic will. The parties agree that holographic wills were valid at the time

---

[88] Dkt. No. 19, at pp. 6–8.
[89] Dkt. No. 26, at p. 18.
[90] Dkt. No. 26, at p. 16 (emphasis added).

the handwritten paragraph was drafted, pursuant to Articles 1393 and 1394.[91] However, the parties dispute the number of requirements to form such a will. Petitioner argues that only Articles 1444 and 1445 provide the requirements to form a valid holographic will,[92] while Respondent argues that Articles 1447, 1448, 1449, and 1451 also apply.[93] The Court agrees with Respondent because each of these Articles from 1444 through 1451 are found within Chapter IV of the CCT, entitled "De testament ológrafo," which translates to holographic will, and the additional Articles referenced by Respondent clearly provide formation requirements.

The Court thus agrees with Respondent that there are eleven requirements to create a valid holographic will, which are translated by Respondent as follows:

(I) The testator had to be an adult;

(II) The holographic will had to be fully written by the testator in his or her own hand and signed by the testator;

(III) The holographic will had to state the day, month and year in which it was granted;

(IV) The testator had to imprint his or her thumbprint on the original and duplicate copy of the holographic will;

(VI) The original and duplicate copy of the holographic will had to be placed inside closed and sealed envelopes which then had to be taken by the testator personally to the offices of the Public Property Registry;

(VII) If the registrar in charge of the Public Property Registry did not know the testator, the testator had to present two witnesses who had to identify him;

(VIII) The original of the holographic will had to be deposited by the testator at the Public Property Registry;

(IX) On the envelope containing the original, the testator, by his own hand, had to write "My Will is contained in this envelope" and write the place and date on which the deposit was made and then he, the registrar and the two witnesses had to sign the envelope;

---

[91] Dkt. No. 55-1, at p. 16; Dkt. No. 60-1, at p. 23.
[92] Dkt. No. 61, at ¶ 24.
[93] Dkt. No. 60, at ¶ 43.

(X) The registrar was to write the following statement on the envelope containing the duplicate copy of the holographic will: "I received the sealed envelope that [the testator] is claiming to contain the original of his holographic Will, of which, according to claims made by said man, there is a duplicate copy in this envelope[]"; the registrar was then to write the place and date on the envelope and the registrar, testator and two witnesses were to sign the envelope;

(XI) After the deposit was made, the registrar was to retain possession of the original holographic will and make an appropriate notation thereof in the records of the Public Property Registry.[94]

In Respondent's motion for summary judgment, Respondent argues that Petitioner fails to show that the 1970 handwritten paragraph was "fully written" by Gonzalez in his own hand, that there is an original and duplicate copy of the document, that Gonzalez's thumbprint was on the original and duplicate copy, that the document was placed in a closed and sealed envelope that Gonzalez presented to the Public Property Registry or a local judge, or that any of the registration and deposit requirements were satisfied.[95] In response, Petitioner merely argues that the holographic will satisfies Articles 1444 and 1445 because "[f]irst, the will was executed when Nicolas Gonzalez was 61 years old. Second, the will was handwritten by Nicolas Gonzalez. Third, the will is signed by Nicolas Gonzalez. Finally, the will includes the day, month, and year of its execution."[96] Petitioner does not dispute the lack of any evidence supporting that the other requirements under the CCT have been satisfied, holding steadfast to his belief that only Articles 1444 and 1445 apply. As a result, the Court finds that the 1970 handwritten paragraph is not a valid holographic will under the CCT.

### iii. Additional Concerns

The Court now addresses additional concerns surrounding the 1963 document and the 1970 handwritten paragraph. While the Court examines each of these concerns, ultimately, none

---

[94] Dkt. No. 60, at ¶ 43.
[95] Dkt. No. 60, at ¶ 44.
[96] Dkt. No. 61, at ¶ 25.

of them raise a genuine issue of material fact. As previously discussed, the lack of evidence to support that the handwritten paragraph is a deed, and the failure to satisfy the CCT's requirements for forming a valid holographic will renders each of these concerns factually immaterial. Nevertheless, the Court recognizes numerous uncertainties surrounding this 1963 document and the handwritten paragraph.

The first concern regards what was actually conveyed by the 1963 document. While Petitioner has translated this document to reflect a conveyance of property, the document actually references the sale of a house on such property although it provides that Natalia Segura, with her house, may remain on the property as long as she wishes. Thus, there is serious doubt that this is a land conveyance deed, as claimed by Petitioner. The second concern is whether the property referenced in the 1963 document was actually transferred to Gonzalez. This would have been significant if Petitioner demonstrated that the 1970 handwritten paragraph satisfied Article 379, because the Court would have needed to address whether Gonzalez had rights in the property pursuant to the 1963 document. Absent rights in the property, Gonzalez could not devise the property to Petitioner. The 1963 document states "Manuel Gonzalez to Natalia Segura," with no mention of the alleged father, Gonzalez, in the main text.[97] Even though it does not appear that the property was conveyed to anyone besides Segura, Gonzalez nevertheless allegedly signed the document.[98] His signature is unusual considering the document only provides for one "comprador" (buyer),[99] instead of multiple "compradores" (buyers).

Petitioner addresses these issues by explaining that "comprador" is the male version of the noun, which "followed by his signature disposes of any doubt that Nicolas Gonzalez partook

---

[97] Dkt. 60-1, Ex. A; Dkt. 61-3.
[98] Id.
[99] Id.

in the transaction."[100] This does not, however, explain the references within the body of the document to "ella," translated "she." Petitioner further submitted a Consular Certification that certified Gonzalez's involvement in the property transaction, and Petitioner explains that both Segura's testimony and a payment receipt with Gonzalez's name as the property purchaser further support that Gonzalez was involved in the transaction.[101] The Consular Certificate adds nothing to this case as it only reflects Segura's assertion – "she [Segura] stated . . . Manuel Gonzalez sold me a property . . . Nicolas Gonzalez paid for this property."[102]

As a last ditch effort, Petitioner advances a possible motive for not including Gonzalez's name in the body of the contract, which is that under Article 27 of the Mexican Constitution, "a foreigner cannot own land in Mexico within 100 kilometers of the border."[103] This argument is perplexing because even though Gonzalez's name was not in the body of the conveyance, he nevertheless signed the document. If Gonzalez was one of the actual purchasers, then signing the document would put him in direct violation of the Mexican Constitution by virtue of becoming a landowner. Even with this concern, no genuine issue of material fact is raised, because as previously discussed, the 1970 handwritten paragraph does not satisfy Article 379.

The last concern involves the testamentary intent in the 1970 handwritten paragraph, which states, "yo Nicolas Gonzalez *dejo/deje* esta propiedad para la señora Natalia Segura y mis hijos Ernesto, Ruben, Ernesto Gonzalez pagada en su totalidad el mes de Agosto 8 de 1970."[104] The parties dispute whether the word following Gonzalez reads *dejo* or *deje*. The interpretation of this word would be important for purposes of establishing whether Gonzalez had testamentary intent, or instead intended to gift the property to Petitioner. Petitioner argues that this

---

[100] Dkt. 61, at ¶ 20.
[101] *Id.* at ¶ 21, Ex. 4.
[102] *Id.* Ex. 4.
[103] *Id.* at ¶ 22.
[104] Dkt. No. 60-1, at p. 2 (emphasis added).

interpretation is material because a finding that the word is *dejo*, which is the present tense of the verb dejar, meaning "to leave," signifies testamentary intent, while Respondent's position that the word is *deje*, which is the past tense of the verb dejar, meaning "I left," signifies intent to gift the property. However, the Court does not find that this difference in interpretation is material because Petitioner has not otherwise satisfied the requirements for showing that the 1970 handwritten paragraph was a valid holographic will. Thus, no genuine issue of material fact arises under this last concern.

### IV. Holding

Petitioner has failed to satisfy his burden of raising a genuine issue of material fact. For the foregoing reasons, the Court **GRANTS** Respondent's motion for summary judgment and **DENIES** the motion for leave to redesignate expert witness as moot. Petitioner's claim is hereby **DISMISSED WITH PREJUDICE.** A separate final judgment shall be entered.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 7th day of October, 2016.

_____
Micaela Alvarez
United States District Judge